IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SOCKET MOBILE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 17-156-VAC-MPT |
| COGNEX CORPORATION, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM**

**I.     INTRODUCTION**

On February 14, 2017, Socket Mobile, Inc. ("plaintiff") filed this action against Cognex Corporation ("defendant"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and *quantum meruit*.[1] The parties signed a contract ("the Agreement") on December 3 and 4, 2013, which defendant terminated on March 27, 2014.[2] On April 24, 2017, defendant filed its answer, which included three counterclaims: breach of contract, breach of duty of good faith and fair dealing, and violation of M.G.L. ch. 93A, § 11 (otherwise known as the "Massachusetts Consumer Protection Law").[3] The third count, violation of M.G.L. ch. 93A, § 11 (the "Chapter 93A claim"), is the claim under consideration.[4]

Presently before the court is plaintiff's motion to dismiss defendant's Chapter 93A counterclaim and defendant's motion to strike new arguments raised in plaintiff's reply

---

[1] D.I. 1.
[2] D.I. 14 at 12.
[3] D.I. 10.
[4] D.I. 18.

brief.[5] For the reasons stated below, plaintiff's motion is granted and defendant's motion is granted.[6]

## II. BACKGROUND

Plaintiff is a small company incorporated in Delaware with its principal place of business in California.[7] Defendant is incorporated in and has its principal place of business in Massachusetts.[8] At the time of original negotiations with defendant, plaintiff had few financial and legal resources, and depended on defendant when drafting the Agreement.[9]

Defendant's technology, DataMan, "reads, verifies, and assures quality of letters, numbers and symbols."[10] Defendant wanted to develop software that would allow it to operate its DataMan bar code scanners on Apple and Android devices.[11] While defendant had experience with connecting products via Bluetooth and Wi-Fi, it was inexperienced in creating an Apple or Android protocol – the area of plaintiff's expertise.[12] Therefore, in late June 2013, defendant approached plaintiff about participating in the Roadrunner Project ("the Project").[13]

Due to plaintiff's financial situation, defendant offered to provide funding through

---

[5] *See id.*; D.I. 21.
[6] The parties consented to the jurisdiction of this magistrate judge for their respective motions addressed herein. D.I. 40.
[7] D.I. 14 at 6, 8.
[8] *Id.* at 6-8.
[9] *Id.* at 2-3.
[10] D.I. 15 at 31.
[11] *Id.*
[12] *Id.* at 31-32.
[13] D.I. 14 at 9.

an interest bearing loan.[14] After negotiations in August 2013, defendant offered to license plaintiff's iOS software development kit ("SDK") for $2 million with additional fees for related support services.[15] Plaintiff's engineers started preparing for the Project and had weekly training meetings with defendant's engineers.[16] Plaintiff asserts defendant came to possess its proprietary information, trade secrets, and other intellectual property through these meetings and their continued work on the Project together.[17]

Plaintiff claims the parties intended for an agreement to be reduced to writing and executed by August 2013.[18] On November 7, 2013, a draft of the Agreement was sent to plaintiff,[19] who responded with comments on November 10, 2013. Plaintiff did not note any issues with the deadlines for the Project in the draft.[20] On November 25, defendant eliminated a down payment provision, and on November 27, plaintiff requested certain milestone deadlines be delayed.[21] Plaintiff signed the Agreement on December 3, 2013, and defendant executed on the following day.[22]

The Agreement outlined five development phases, each with discrete milestones that were generally identified.[23] In Phase I, plaintiff was required to meet four separate milestones: (1) complete the iAP2 with a functional demonstration on an Arduino processor, (2) include iOS SDK ERD in change control, (3) conduct a SDK

---

[14] *Id.* at 10.
[15] *Id.* at 11-12.
[16] *Id.* at 11.
[17] *Id.*
[18] *Id.* at 10-11.
[19] D.I. 15 at 35.
[20] *Id.*
[21] *Id.*; D.I. 14 at 12.
[22] D.I. 15 at 36; D.I. 14, Ex. A at 18.
[23] D.I. 14 at 14.

demonstration, showing its ability to communicate with DataMan over a cable, and (4) conduct a CogPad demonstration using a cable.[24] The goal was to unveil a working implementation on an Apple device at defendant's sales kickoff meeting in January 2014.[25] The first deadline was December 10, 2013.[26] At that time, plaintiff was to provide a functional demonstration on an Arduino processor, which is an interim processor similar to the AT70 platform.[27] Plaintiff conducted the demonstration on December 17, 2013, and most of the demonstration was performed on a Mac computer rather than the Arduino processor.[28] By December 18, 2013, defendant should have been able to "port" the demo onto the AT70 platform based on the deadlines in the Agreement;[29] however, Plaintiff did not deliver this technology to defendant, along with an invoice for $250,000, until December 28, 2013.[30]

In late January 2014, plaintiff emailed defendant that the iOS SDK ERD was finished, although the deadline had been December 31, 2013.[31] Concerned with plaintiff's delays, defendant offered to assist with the Project by paying for one of plaintiff's engineers to travel to Germany.[32] Defendant claims plaintiff refused.[33] On February 14, 2014, defendant's engineers acknowledged that the milestone deadlines

---

[24] D.I. 15 at 37.
[25] *Id.* at 27.
[26] *Id.* at 38.
[27] *Id.* at 37-8.
[28] *Id.* at 38.
[29] *Id.*
[30] D.I. 14 at 19.
[31] D.I. 15 at 41.
[32] *Id.* at 42.
[33] *Id.*

4

and the payment schedule needed to be changed.[34] That same day, defendant sent a Termination for Cause Notice (the "February Termination Notice"), which threatened to end the Agreement if plaintiff failed to cure its default within 30 days.[35] Plaintiff maintains the February Termination Notice was forwarded by email, failed to identify the default needed to be cured, and was not issued by a member of the Project Membership Team, contrary to the Agreement's specifications regarding termination notices.[36] On February 17, 2014, plaintiff responded to the February Termination Notice and acknowledged the deficiencies.[37] February 27, 2014 was the deadline for Phase II, but certain milestones for Phase I remained incomplete.[38] On February 28, 2014, plaintiff delivered a sample of the iOS app that included limited functionality SDK with the DataMan 8500 Wi-Fi scanner, along with a letter offering plans to cure the defaults and proceed with the Project.[39] In response, defendant proposed an amendment (the "Amendment") to the Agreement that eliminated Phase I and proceeded directly into Phase II.[40] Defendant maintains the Amendment was offered to avoid terminating the Agreement with plaintiff.[41]

On March 6, 2014, defendant forwarded a second Termination for Cause Notice (the "March Termination Notice"), which plaintiff received on March 10.[42] Defendant

---

[34] D.I. 14 at 23.
[35] *Id.* at 23-4.
[36] *Id.* at 24.
[37] D.I. 15 at 43.
[38] *Id.* at 39.
[39] *Id.* at 42-3.
[40] *Id.* at 45.
[41] *Id.*
[42] D.I. 14 at 25.

5

advised that March 17, 2014 was the deadline for plaintiff to cure its default.[43] On March 19, 2014, plaintiff notified defendant it would deliver an updated version of iOS SDK ERD – including Softscanner and Cognamer by the end of March, on the condition that defendant provided the Cognamer source code and necessary documents.[44] Plaintiff delivered an updated iOS SDK ERD that only included Softscanner to defendant's engineering team on March 26, 2014.[45] That same day, plaintiff sent a letter to defendant, claiming a final draft of the Amendment would be forwarded to plaintiff's Board of Directors for approval.[46] The following day, plaintiff informed defendant its shipment to defendant's offices in Germany would cure the default on the Arduino demo milestone from Phase I.[47] Plaintiff, in a letter to defendant's legal counsel, claimed all milestones in Phase I were completed, requested validation of the completion of all milestones in Phase I, and included an invoice for $250,000.[48] Defendant's Vice President and Unit Business Manager, Carl Gerst, upon learning of the shipment, emailed plaintiff, advising that the work was "absolutely worthless" and directed the engineering team to reject the shipment.[49]

Gerst threatened to terminate the Agreement for cause unless plaintiff signed the Amendment.[50] Plaintiff did not execute the Amendment, and defendant subsequently

---

[43] D.I. 15 at 44.
[44] D.I. 14 at 33.
[45] *Id.*
[46] D.I. 15 at 45-6.
[47] *Id.* at 46.
[48] D.I. 14 at 32.
[49] *Id.*
[50] *Id.* at 36.

terminated the Agreement on March 27, 2014.[51] Plaintiff received defendant's notice of termination on March 31, 2014.[52] Defendant finally released Roadrunner in April 2016.[53]

Plaintiff claims defendant failed to properly dispose of or return its intellectual property, as required under the Agreement.[54] Defendant, on the other hand, avers it returned or destroyed all confidential information belonging exclusively to plaintiff, but *plaintiff* failed to do the same with defendant's confidential information.[55]

## III. STANDARD OF REVIEW

### A. Motion to Strike

Pursuant to FED. R. CIV. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[56] "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."[57] "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."[58] Scandalous matter has been defined as "that which improperly casts a derogatory light on someone, most typically on a party to the action."[59] Although motions to strike "serve to 'clean up the pleadings, streamline

---

[51] *Id.*
[52] *Id.*
[53] D.I. 15 at 48.
[54] D.I. 14 at 33.
[55] D.I. 15 at 47.
[56] FED. R. CIV. P. 12(f).
[57] *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-1292 (D. Del. 1995).
[58] *Id.* at 1292.
[59] *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012) (quoting *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

7

litigation, and avoid unnecessary forays into immaterial matters,'"[60] as a general matter, these motions are disfavored.[61] They "ordinarily are denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'"[62] Therefore, even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.[63] When ruling on a motion to strike, the court must construe all facts in favor of the nonmoving party,[64] and only grant the motion when the allegation is clearly insufficient.[65]

> **B.      Motion to Dismiss**

FED. R. CIV. P. 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case.[66] "The issue is not whether a [party] will ultimately prevail, but whether the

---

[60] *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, C.A. No. 09-300-LPS, 2011 U.S. Dist. LEXIS 17172, at *4 (D. Del. Feb. 22, 2011) (quoting *McInerney v. Mayer Lumber & Hardware, Inc.* 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

[61] *O'Gara ex rel. Portnick v. Countrywide Home Loans, Inc.*, C.A. No. 08-113-JJF, 2010 U.S. Dist. LEXIS 77130, at *3 (D. Del. July 30, 2010) (citing *Seidel v. Lee*, 954 F. Supp. 810 (D. Del. 1996)).

[62] *Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quoting *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

[63] *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotations omitted).

[64] *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del 1988) (citations omitted).

[65] *Aoki*, 839 F. Supp. 2d at 764 (quoting *Singleton v. Medearis*, Civ. No. 09-CV-1423, 2009 U.S. Dist. LEXIS 101187, at *2 (E.D. Pa. Oct. 28, 2009)).

[66] *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).

claimant is entitled to offer evidence to support the claims."⁶⁷ A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations . . . as true, and viewing them in the light most favorable" to the non-moving party, the court determines that party is not entitled to relief.⁶⁸ While the court draws all reasonable factual inferences in the light most favorable to a claimant, it rejects unsupported allegations, "bald assertions," and "legal conclusions."⁶⁹

To survive a motion to dismiss, a party's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."⁷⁰ Parties are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.⁷¹ Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.⁷² A claim has facial

---

⁶⁷ *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a [pleading] adequately states a claim, it may not be dismissed based on a district court's assessment that the [party] will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder").

⁶⁸ *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

⁶⁹ *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged").

⁷⁰ *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

⁷¹ *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

⁷² *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and

plausibility when the factual content is sufficient for the court to draw the reasonable inference that a party is liable for the misconduct alleged.[73] Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations.[74] Courts generally consider only the allegations contained in the pleading, exhibits attached, and matters of public record when reviewing a motion to dismiss.[75]

## IV. DISCUSSION

### A. Motion to Strike New Arguments in Plaintiff's Reply Brief

Defendant moves to strike new arguments in plaintiff's reply brief that are based on insufficient pleading of unfair or deceptive conduct, specifically the failure to identify a "legally cognizable injury under Massachusetts Chapter 93A."[76] Defendant maintains these arguments were not raised previously and do not expand on the arguments in plaintiff's opening brief.[77]

Although motions to strike are generally disfavored,[78] the Third Circuit has consistently held new arguments in reply briefs are prejudicial and unfair, because a party cannot respond.[79] Positions asserted for the first time in a reply brief are deemed

---

distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it'") (quoting *Twombly*, 550 U.S. at 555 n.3).
[73] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).
[74] *Twombly*, 550 U.S. at 563 (citations omitted).
[75] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).
[76] D.I. 29 at 2.
[77] *Id.* at 3.
[78] D.I. 35 at 2 (citing *Cornell U. v. Illumina, Inc.*, 2013 WL 3216087, at *2 (D. Del. 2013)).
[79] *Werner v. Werner*, 267 F.3d 288, 302 (3d Cir. 2001) (noting "[a] reply brief is like rebuttal - an opportunity for the appellant to 'reply' to arguments of the appellee, not to raise a new issue at a time when the appellee cannot respond. That is unfair").

to be waived.[80]

Plaintiff purports it consistently challenged the Chapter 93A claim as duplicative of and subsumed in defendant's other claims, and thus, defendant is objecting to extensions of plaintiff's original argument.[81] Plaintiff's arguments that defendant moves to strike, however, are new. Plaintiff contends for the first time in its reply brief that the Chapter 93A claim fails because it does not meet the requirements under M.G.L. ch. 93A, § 11,[82] which plaintiff did not raise, alternatively or implicitly, in its opening brief.[83] Asserting a claim is subsumed by other claims because it is duplicative, is not the same as or similar to the contention that the elements cannot be met to succeed on that claim. Nor does it build off of the assertion that the claim will be subsumed by other claims. Allowing these arguments would be prejudicial, and defendant's motion to strike new arguments in plaintiff's reply brief is granted.

Plaintiff also contends it is simply "address[ing] points raised for the first time in [defendant's] Opposition Brief."[84] Defendant, however, did not assert anything new regarding the Chapter 93 claim in its Opposition Brief.[85] It merely provided a counterargument to plaintiff's contention that the Chapter 93A claim is duplicative of breach of contract claim.[86] Plaintiff further alleges *it*, not defendant, would be prejudiced

---

[80] *U.S. v. Cruz*, 757 F.3d 372, 387-88 (3d Cir. 2014) (citing *U.S. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005)).
[81] D.I. 35 at 3.
[82] *Compare* D.I. 18 at 6-12 *with* D.I. 23 at 5-8.
[83] *See* D.I. 18 at 6-12.
[84] D.I. 35 at 7.
[85] *See* D.I. 21.
[86] *See* D.I. 35 at 6.

if this court were to grant the motion to strike.[87] Plaintiff, however, had ample opportunity to raise all arguments in its opening brief and failed to do so. Granting this motion would not be prejudicial to plaintiff.

B.  **Motion to Dismiss Count III of Counterclaims**

Plaintiff argues the Massachusetts Consumer Protection Law under Chapter 93A does not apply, and therefore, Count III of defendant's counterclaims should be dismissed.[88] Although defendant acknowledges that Delaware law governs the interpretation of the Agreement, it argues the choice of law provision at issue should be narrowly construed and only applies to contract claims.[89] Defendant contends because its Chapter 93A claim addresses conduct distinct from the contract claim, the choice of law provision does not apply.[90]

In support, defendant relies on *Jacobson v. Mailboxes Etc. U.S.A., Inc.*[91] and *L'Oreal USA, Inc. v. RG Shakour, Inc.*,[92] where Massachusetts courts found narrow choice of law provisions do not bar claims under Chapter 93A.[93] Defendant maintains the choice of law provisions in those cases are similar to the provision at issue, warranting a narrow interpretation, and, as a result, its Chapter 93A claim is not

---

[87] D.I. 35 at 7-8.
[88] D.I. 18 at 7-10.
[89] D.I. 21 at 4.
[90] *Id.* at 4-6.
[91] 646 N.E.2d 741 (Mass. 1995) (contract "to be construed under and governed by the laws of the State of CA").
[92] 2010 WL 3504140 (D. Mass. 2010) (noting the "Agreement shall be construed in accordance with and all disputes herein shall be governed by the internal laws of the State of New York").
[93] D.I. 21 at 5.

barred.[94]  Plaintiff relies on *Mead Corp. v. Stevens Cabinets, Inc.*,[95] where a Massachusetts court found the Chapter 93A allegations as duplicative of the breach of contract claim, and the agreement's choice of law provision selected another state's law.[96]  Defendant emphasizes that the court in *L'Oreal* found the choice of law provision did not bar the Chapter 93A claim, although the agreement designated New York law and the plaintiff similarly alleged that the defendant violated Chapter 93A by breaching the contract.[97]  However, the *L'Oreal* court found the choice of law provision under consideration not as broad as other similar provisions that barred Chapter 93A claims.[98]

In the instant matter, the choice of law provision is:  "[t]he validity, interpretation, construction, and performance of the Agreement shall be governed by and construed in accordance with the laws of the State of Delaware."[99]  Unlike the provision in *L'Oreal*, which reads "[t]his Agreement shall be construed in accordance with and all disputes herein shall be governed by the internal laws of the State of New York"), the provision at issue *is* broad.[100]  The choice of law provision at issue is similar to *Mead*, which provided for the contract and the sale of products to be governed by Ohio law.[101]  Here, the "validity, interpretation, construction, and *performance* of the Agreement" is

---

[94] *Id.*
[95] 938 F.Supp. 87 (D. Mass. 1996) (contract's choice of law provision stating the "document and the sale of any products hereunder shall be governed by and construed in accordance with the laws of the State of Ohio").
[96] D.I. 18 at 8-9.
[97] D.I. 21 at 5-6.
[98] *L'Oreal USA, Inc. v. RG Shakour, Inc.*, 2010 WL 350140, at *5 (D. Mass. 2010).
[99] D.I. 14, Ex. A. at 16.
[100] *Compare L'Oreal*, 2010 WL 350141, at *5 *with id.*
[101] *Mead*, 938 F.Supp. at 88.

governed by Delaware law,[102] which encompasses not just the Agreement, but also the relationship and obligations between the parties.[103] Additionally, *Jacobson* provides little guidance in the present matter.[104] Although the choice of law provision in *Jacobson* was broader than the provision in *L'Oreal*,[105] the Chapter 93A claim was not barred because violations of the Massachusetts Consumer Protection Law occurred before the contract was formed.[106] In the present matter, the alleged Chapter 93A violations occurred *after* the contract was formed.[107]

If the Agreement is governed by the law of a state other than Massachusetts, and the Chapter 93A allegation is duplicative of a breach of contract claim, defendant cannot assert rights under the Massachusetts Consumer Protection Statute.[108] The choice of law provision at issue designated another state's law, specifically Delaware.[109] Defendant argues its Chapter 93A claim addresses separate and distinct conduct from its breach of contract claim.[110] Defendant avers the majority of its allegations relate to the parties' negotiations over the Amendment.[111] Plaintiff, however, notes the factual allegations pled in the Chapter 93A claim are the same as those raised in the breach of

---

[102] D.I. 14, Ex. A at 16 (emphasis added).
[103] *Compare Mead*, 938 F.Supp. at 88 *with id.*
[104] *See Jacobson*, 646 N.E.2d 741 (Mass. 1995).
[105] The choice of law provision in *Jacobson* read: "[the Agreement] is to be construed under and governed by the laws of the State of California." *Id.* at 573.
[106] *Id.* at 578.
[107] *See* D.I. 15 at 50.
[108] *See Mead Corp. v. Stevens Cabinets, Inc.*, 938 F.Supp. 87, 91 (D. Mass. 1996).
[109] D.I. 14, Ex. A at 16.
[110] D.I. 21 at 7-8.
[111] *Id.* at 7.

contract claim.[112] Defendant asserts in its Chapter 93A claim:

> Socket engaged in unfair and/or deceptive acts and practices that violate M.G.L ch. 93A, § 11. Among other things, Socket continually and intentionally misstated its ability to perform under the Agreement, led Cognex to believe Socket was willing and ready to enter into an amendment to the Agreement and then turned away from that amendment without cause at the eleventh hour, when Cognex had already delayed its rightful termination of the Agreement in order to pursue the amendment, and misstated its obligations under the Agreement during the cure period following Cognex's February 14 default notice in an attempt to surreptitiously renegotiate the terms of the Agreement ex post facto.[113]

The breach of contract claim similarly notes plaintiff's failure to perform under the Agreement and its attempts (and ultimate failure) to cure the defaults.[114] Defendant's Chapter 93A claim "go[es] to the core of the contract dispute" and is duplicative of the breach of contract claim.[115]

Because the court previously concluded plaintiff's assertions that defendant fails to meet the required elements for the Chapter 93A claims as new arguments raised in its reply brief, accordingly, it will not entertain these arguments here.

Plaintiff relies on the Erie Doctrine, which provides when a federal district court is sitting in diversity, it must apply the substantive law of the forum state, including its choice of law.[116] Thus, notwithstanding the court's finding to dismiss the Chapter 93A claim, Delaware law would have applied to the choice of law provision in this matter.[117]

---

[112] D.I. 18 at 8-10.
[113] D.I. 15 at 50.
[114] D.I. 15 at 49.
[115] *See BNY Financial Corp. v. Fitwel Dress Co., Inc.*, 1997 WL 41518, at *4 (Mass. 1997).
[116] D.I. 23 at 4. *See also Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).
[117] *See Erie*, 304 U.S. at 78.

15

Because the choice of law provision at issue is broadly written, the Chapter 93A claim amounts to "embroidered 'breach of contract claims,'" and these potential violations occurred after the Agreement was formed, the Chapter 93A claim is barred.[118] Therefore, plaintiff's motion to dismiss defendant's Chapter 93A claim is granted.

## V.    CONCLUSION

For the foregoing reasons,

(1) Plaintiff's motion to dismiss Count III of Defendant's counterclaims (D.I. 17) is GRANTED.

(2) Defendant's motion to strike new arguments submitted in Plaintiff's reply brief (D.I. 29) is GRANTED.

Dated: August 18, 2017                                          /s/ Mary Pat Thynge
                                                                Chief U.S. Magistrate Judge

---

[118] *See BNY Financial Corp. v. Fitwel Dress Co., Inc.*, 1997 WL 42518 (Sup. Ct. Mass. 1997) (quoting *Northeast Data Sys. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609 (1st Cir. 1993)).